United States Court of Appeals
Fifth Circuit

**F I L E D**

July 3, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 05-11320

NATIONAL ATHLETIC TRAINERS' ASSOCIATION, INC.,
A Texas Non-Profit Organization,

Plaintiff-Appellant,

versus

UNITED STATES DEPARTMENT OF HEALTH AND
HUMAN SERVICES; MICHAEL O. LEAVITT, Secretary
of Health and Human Services; MARK MCCLELLAN,
Medical Doctor, Administrator, Centers for Medicare & Medicaid,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Appellant National Athletic Trainers' Association, Inc. ("NATA") appeals from the district court's dismissal of its suit for injunctive and declaratory relief for lack of subject matter jurisdiction. NATA brought suit challenging the Secretary of Health and Human Services's ("the Secretary") implementation of a new rule under the Medicare regulations providing that therapy services administered by athletic trainers incident to physicians' services are no longer reimbursable under Medicare Part B. The district court concluded that NATA has standing to challenge the new rule;

however, it further concluded that it lacked jurisdiction because claims arising under the Medicare Act must first proceed through all available administrative avenues before a district court has jurisdiction to hear them. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Medicare is a federally funded health insurance program for the elderly and disabled. Medicare Part B, the part of the program at issue here, is a voluntary supplementary medical insurance program covering physicians' services, outpatient hospital care, and certain other services. Beneficiaries enrolled in Part B are generally entitled to covered "medical and other health services," including "physician's services" and "services and supplies . . . furnished as an incident to a physician's professional service." 42 U.S.C. § 1395x(s)(1), (2). In 1997, Congress amended the Medicare statute to prohibit payment "for any expenses incurred for items or services"

> in the case of outpatient occupational therapy services or outpatient physical therapy services furnished as an incident to a physician's professional services . . . that do not meet the standards and conditions (other than any licensing requirement specified by the Secretary) under the second sentence of section 1395x(p) of this title . . . as such standards and conditions would apply to such therapy services if furnished by a therapist.

42 U.S.C. § 1395y(a)(20).

On November 15, 2004, the Secretary of Health and Human Services issued a final rule modifying those portions of the Medicare regulations pertaining to therapy services that are included under the "incident to" coverage of Medicare Part B. The relevant provisions authorize payment for occupational therapy and physical therapy services that are provided "incident to" a physician's professional services only if therapy services are provided by an occupational or physical therapist who meets the qualifications provided by 42 C.F.R. § 484.4. 69 Fed. Reg. 66,236, 66,352 (Nov. 15,

2

2004). Accordingly, "the services of . . . athletic trainers who do not meet the requirements in § 484.4 except licensure, cannot be billed as therapy services incident to a physician's service." *Id.*

NATA filed suit on May 27, 2005, seeking a declaratory judgment and an injunction against enforcement of the new rule. The Secretary filed a motion to dismiss arguing that NATA lacked standing and that jurisdiction over the claims was precluded by a statutory bar against § 1331 federal question suits involving claims that arise under the Medicare Act. The district court held that NATA had standing, but found the jurisdictional bar applicable and dismissed the suit for lack of subject matter jurisdiction. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

This court reviews questions of standing de novo. *Delta Commercial Fisheries Ass'n v. Gulf of Mex. Fishery Mgmt. Council*, 364 F.3d 269, 272 (5th Cir. 2004). We also review a district court's grant of a motion to dismiss for lack of subject matter jurisdiction de novo. *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir. 2000).

### B. Standing

In addition to satisfying the Article III requirements for standing, a plaintiff challenging an administrative agency's decision must also show that "'the interest sought to be protected by the complainant [is] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). The Supreme Court has explained that

3

> [i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.

*Id.* at 399-400 (footnote omitted); *see also Corrosion Proof Fittings v. EPA*, 947 F.2d 1201, 1209 (5th Cir. 1991).

The Secretary argues that NATA lacks prudential standing because its interest is not within the zone of interests protected by the provision of the statute NATA is challenging. We disagree. The purpose of the amendment appears to be standardizing the quality of therapy services provided to Medicare beneficiaries. Accordingly, the interests protected by the statute are the Medicare beneficiary's interest in receiving and the physician's interest in providing quality care. NATA's interest comports with the physician's interest in providing services and the Medicare beneficiary's interest in receiving those services. *Cf. Am. Chiropractic Ass'n, Inc. v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005) ("[T]he interests of enrollees and the interests of chiropractors converge: the chiropractor provides the service, the enrollee receives it, and Medicare provides reimbursement. This is more than enough to satisfy the less-than-demanding zone-of-interest test."). NATA's interest in providing services to Medicare beneficiaries is sufficient to satisfy the zone of interests tests; accordingly, the district court correctly concluded that NATA has standing to challenge the rule.

C.     Subject Matter Jurisdiction

The Medicare Act limits the jurisdiction of federal courts to review claims brought under the Act by requiring that "virtually all legal attacks" be brought through the agency. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000). Specifically, 42 U.S.C. § 1395ii makes

4

§ 405(h)'s bar of actions against the Commissioner of Social Security brought under § 1331 or § 1346 applicable to claims brought under the Medicare Act against the Secretary, thereby purporting to make § 405(g) the exclusive judicial review method for actions by the Secretary. 42 U.S.C. § 1395ii; 42 U.S.C. § 405(h); *Ill. Council*, 529 U.S. at 10. In *Illinois Council* the Supreme Court clarified an exception to § 405(h)'s jurisdictional bar that it originally recognized in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986). The Court explained that "§ 1395ii does not apply § 405(h) where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. Accordingly, the crux of the parties' dispute is whether channeling review through the agency would result in "no review at all" of NATA's claim.

The parties agree that NATA's members cannot obtain administrative review because they are neither beneficiaries nor providers, but they disagree as to whether it is sufficient that the claim that NATA is making can be brought by a third party. The Secretary argues that NATA's claims do not fall within the *Illinois Council* exception because physicians that employ athletic trainers can pursue administrative review and, if such a claim is denied, a physician could seek judicial review in federal court and the court would have jurisdiction to determine the validity of the regulation. NATA contends that it is not sufficient that third parties can assert their claims, and that even if it were sufficient, physicians lack incentive to challenge the rule because of statutory penalties and costs of litigation. We first consider whether it is sufficient that a third party can assert the claim.

In *American Chiropractic*, 431 F.3d 812, an organization representing chiropractors brought suit under § 1331 challenging the Secretary's determination that not only chiropractors, but also medical doctors and osteopaths could provide certain covered services. The organization also argued

5

that the Secretary illegally allowed health maintenance organizations to require that a patient obtain a referral before consulting a chiropractor. The District of Columbia Circuit noted that in order to determine whether the *Illinois Council* exception applied, it must determine "whether the Association could get its claims heard administratively and whether it could receive judicial review after administrative channeling." *Id.* at 816. The court reasoned that an enrollee could obtain the services of a chiropractor without obtaining a referral and then challenge the referral requirement when coverage was denied. *Id.* at 817. The court further reasoned that the chiropractor herself could initiate an administrative challenge by waiving her right to payment from the patient and becoming his assignee. *Id.* Accordingly, the court concluded that the *Illinois Council* exception did not apply. *Id.*

Unlike the chiropractors in *American Chiropractic*, the athletic trainers here are not service providers, therefore they cannot become assignees of the patients. Nevertheless, the *American Chiropractic* court considered both the patient's and the chiropractor's rights to pursue administrative review. Indeed the court identified the question as follows: "The Association denies that its claims in this case could even become the subject of administrative proceedings. The Secretary argues the opposite. The question therefore is whether the Association could get its claims heard administratively and whether it could receive judicial review after administrative channeling." *Id.* at 816; *see also Am. Chiropractic Ass'n, Inc. v. Shalala*, 131 F. Supp. 2d 174, 176 (D.D.C. 2001) ("At the outset, the Court notes that the analysis of whether requiring administrative review will result in 'no review at all' applies to whether a chiropractor or a Medicare enrollee may assert a claim administratively."), *aff'd in part, rev'd in part sub. nom, Am. Chiropractic Ass'n, Inc. v. Leavitt*, 431 F.3d 812, 815 (D.C. Cir. 2005). We are not persuaded that the inability to acquire the physician or beneficiary's right to administrative review ends our inquiry; "the question is whether, as applied

6

generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into *complete* preclusion of judicial review," *Ill. Council*, 529 U.S. at 22-23. Accordingly, in deciding whether the *Illinois Council* exception applies, we must consider whether the claim may ultimately be subject to review after proceeding through administrative channels.

The parties do not dispute that physicians, as providers, can pursue administrative review, and thereafter seek judicial review if necessary; however, they disagree as to whether physicians have the necessary incentive to do so. NATA contends that a physician who submits a reimbursement claim to Medicare for "incident to" therapy services performed by an athletic trainer knowing those services are not reimbursable could face criminal charges for making false claims or statements and face penalties ranging from imprisonment up to five years and fines of up to $250,000 for an individual or $500,000 for an organization.[1] NATA further observes that most of the fraud-related offenses provide grounds for termination from the Medicare program. In addition to the criminal penalties, NATA contends that a physician may risk civil liability under the False Claims Act, 31 U.S.C. § 3729(a), which carries a fine of $5,000 to $10,000. Finally, NATA points to the cost of defending these claims even if they ultimately do not result in liability as a disincentive. NATA relies on

---

[1] NATA cites the following statutes, all carrying penalties of up to five years' imprisonment and fines of up to $250,000 for an individual, or $500,000 for an organization : false claims, 18 U.S.C. § 287; false statements, 18 U.S.C. § 1001; false statements relating to health care matters, 18 U.S.C. § 1035; and mail and wire fraud, 18 U.S.C. §§ 1341, 1343. NATA also contends that physicians may face criminal liability for health care fraud, 18 U.S.C. § 1347 (carrying a penalty of up to 10 years imprisonment and a fine of up to $250,000 for an individual; or $500,000 for an organization); fraud on federal health care programs, 42 U.S.C. § 1320a-7b(a) (carrying a penalty of up to five years imprisonment and a fine of up to $25,000); and RICO violations, 18 U.S.C. § 1963(a) (carrying a penalty of up to 20 years imprisonment and forfeiture and a fine of up to $250,000 for an individual or $500,000 for an organization).

*American Lithotripsy Society v. Thompson*, 215 F. Supp. 2d 23 (D.D.C. 2002) in support of its contention that these severe penalties remove physicians' incentives to challenge the rule. The *American Lithotripsy* court stated:

> In contrast to *Illinois Council*, defendant here has not contested plaintiffs' assertions that if plaintiffs' members were to refer patients for lithotripsy in violation of defendant's regulations, they would be subject to statutory penalties of up to $15,000 per bill submitted to CMMS and disgorgement of payments received from hospitals.

*Id.* at 29. The court also considered the plaintiffs' inability to represent themselves before the agency, because like the athletic trainers, they were not providers. *Id.* at 30. The court ultimately concluded that because of the severe penalties and "lack of either direct access or an adequate proxy in the administrative review process," § 405(h) did not bar federal question jurisdiction. *Id.*

Unlike the circumstances presented in *American Lithotripsy*, the Secretary specifically counters NATA's argument that physicians will face these penalties. The Secretary responds that the statutes identified by NATA only apply where a claimant makes a knowing or intentional false statement. Accordingly, the Secretary argues that a physician would not violate any of the statutes by submitting a claim for reimbursement for an athletic trainer's services, so long as the physician discloses that services were provided by an athletic trainer and that the regulations therefore prohibited reimbursement. The Secretary explains that physicians have means to disclose that a claim is for statutorily excluded services. Specifically, he argues physicians can use a code, the "GY modifier," to indicate that the item or service is statutorily non-covered or is not a Medicare benefit.

NATA argues that physicians cannot use the "GY" modifier to submit claims for "incident to" therapy services because it is only available for services that are statutorily excluded from reimbursement. In support of this argument, NATA submitted the affidavit of Renee M. Brown, a

8

practice management consultant for physicians. She averred that the GY modifier "is used for 'statutory exclusions,' 'categorical exclusions,' and/or 'technical denials.'" She further attested that the GY modifier is used to obtain a denial so that the physician may seek payment from the patient or secondary insurance provider. She stated that "because the result of such a denial means the beneficiary is solely responsible for the claim, a denial of a claim with a 'GY' modifier would not be appealable through the Medicare hearing process." The Secretary responds that NATA's interpretation of the Medicare manual is incorrect and offers the declaration of John F. Warren[2] of the Centers for Medicare and Medicare Services stating that "it is appropriate for a physician or supplier to use a GY modifier to submit a claim for 'incident to' therapy services provided by personnel who do not meet the qualifications specified by CMS in regulations." Warren's affidavit further explains that the Claims Processing manual proves that "the GY modifier 'should be used with the specific, appropriate HCPCS code when one is available. In cases where there is no specific procedure code to describe services, a 'not otherwise classified code' (NOC) must be used with either the GY or GZ modifier.'" Finally, Warren averred that "nothing in CMS's rules, regulations or guidance prohibits a physician or supplier from submitting a claim for services that are statutorily excluded or do not fall within a Medicare benefit category using the GY modifier, obtaining a denial of that claim from the Medicare carrier, and then appealing the denial of that claim."

In *Illinois Council*, 529 U.S. at 21, the plaintiffs argued that "the regulations, as implemented by the enforcement agencies, deny review in practice by (1) insisting that a nursing home with deficiencies present a corrective plan, (2) imposing no further sanction or remedy if it does so, but

---

[2]Warren is the Acting Director, Division of Medical Review and Education, Program Integrity Group, Office of Financial Management, Centers for Medicare and Medicare Services.

(3) threatening termination if it does not." In response to these arguments, the Supreme Court stated: "The short, conclusive answer to these contentions is that the Secretary denies any such practice." *Id.* at 22. The Court further explained: "The Council gives us no convincing reason to doubt the Secretary's description of the agency's general practice. We therefore need not decide whether a general agency practice that forced nursing homes to abandon legitimate challenges to agency regulations could amount to the 'practical equivalent of a total denial of judicial review. . . .'" *Id.* (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 497 (1991)). In the instant case, the Secretary has rebutted NATA's argument that the "GY modifier" is inapplicable and NATA has not offered a compelling reason to doubt the Secretary's interpretation of the Medicare rules.

With regard to the possible criminal liability, as the Secretary argues, these statutes require knowing or intentional false statement, an element that would obviously be lacking if a physician disclosed that the services were not reimbursable. *See, e.g.*, *United States v. Moore*, 37 F.3d 169, 172 (5th Cir. 1994) ("The federal mail fraud statute under which appellants were charged, 18 U.S.C. § 1341, requires proof of a knowing and willful scheme or artifice to defraud another of property or money and a subsequent mailing to execute the purpose of the scheme."). Further, the Secretary states that "any doubt" on the applicability of the statutes cited by NATA "would be resolved by the government's representations in this litigation. A claim submitted in express reliance on advice from the agency is unlikely to be knowingly false or fraudulent." Accordingly, we agree with the Secretary that the criminal statutes cited by NATA are inapplicable.

We find the civil liability statutes similarly inapplicable. Like the criminal statutes, the False Claims Act applies to *knowing* false statements. The Act provides that "the terms 'knowing' and 'knowingly' mean that a person, with respect to information–(1) has actual knowledge of the

10

information;(2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729 (b). Therefore, a physician who disclosed to the government that the services were not reimbursable could not be said to have *knowingly* submitted a false claim. *See, e.g.*, *United States ex rel. Costner v. United States*, 317 F.3d 883, 889 (8th Cir. 2003) ("The alleged illegal act is the omission of a material fact in a claim for payment. To defend against the charge, the defendants must either dispute the occurrence of the alleged acts or attempt to prove that they adequately disclosed the acts to the government."). We conclude that the ability of physicians to avoid criminal and civil liability by disclosing that the services were provided by an athletic trainer and are not reimbursable greatly reduces the disincentive to challenge the rule. Although we recognize that there may be litigation costs incurred in defending such suits, there are also financial incentives to challenge the rule. The Secretary explains that payments to physicians for "incident to" services are based on the salaries of occupational therapists, physical therapists, and speech-language pathologists, regardless of who provides the services. Consequently, physicians can reduce their costs by employing athletic trainers.

NATA argues that the lack of a challenge by a physician thus far demonstrates that physicians lack incentive to challenge the suit. We disagree. The new rule took effect on January 1, 2005, but implementation was delayed until appropriate manual instructions were published, and was further delayed by this litigation. Consequently, a sufficient period of time has not elapsed for us to infer from the lack of a challenge that there will be no challenge. Further, physicians have already demonstrated their concern about the rule through public comments in response to the proposed rule. For example, they argued that "they believe it is their right and within their authority to decide who can provide effective therapy services in their offices" and the AMA urged the agency "to withdraw proposed

11

changes and reissue a later proposal after consulting with all affected physician and other health professional organizations." 69 Fed. Reg. 66236, 66352-66353. We hold that physicians have administrative remedies available to them that have yet to be exhausted and sufficient incentive to challenge the rule such that the *Illinois Council* exception does not apply; accordingly, the district court correctly concluded that it lacked subject matter jurisdiction over NATA's claim.

III. CONCLUSION

For the foregoing reasons we AFFIRM the district court's dismissal of NATA's complaint for lack of subject matter jurisdiction.