# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 8, 2011

Lyle W. Cayce
Clerk

No. 10-50568

DONALD MCKINLEY, D.C.; CHRISTOPHER VILLASANA,

Plaintiffs-Appellees

v.

GREG ABBOTT, as Attorney General of the State of Texas,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before REAVLEY, GARZA, and SOUTHWICK, Circuit Judges.

REAVLEY, Circuit Judge:

Section 38.12 of the Texas Penal Code (the "Barratry Statute") regulates barratry and solicitation of professional employment.  Appellees brought suit seeking a declaratory judgment that Texas Penal Code §§38.12(d)(2)(A) and 38.12(d)(2)(C) violate the Texas and United States Constitutions.  After a bench trial, the district court entered judgment for the Appellees, holding unconstitutional §38.12(d)(2)(A) as applied to written solicitations, in-person, and telephonic solicitation, and § 38.12(d)(2)(C) as applied to written solicitations, as violations of the United States Constitution's First Amendment

No. 10-50568

guarantee of free speech.  Appellant Greg Abbott, Attorney General of Texas, appeals the District Court's judgment.  We reverse.

**I.**

Section (d) of the Texas Barratry Statute regulates solicitation of professional employment by "an attorney, chiropractor, physician, surgeon, or private investigator licensed to practice in [the] state or any person licensed, certified, or registered by a health care regulatory agency of [the] state."[1]  In 2009, the Texas Legislature amended the statute to include solicitations by telephone or in person, closing the gap left by the former statute, which reached only written communications.  Pursuant to the statute as amended, a lawyer or chiropractor commits an offense if he or she

> with the intent to obtain professional employment for the person or for another, provides or knowingly permits to be provided to an individual who has not sought the person's employment, legal representation, advice, or care a written communication or a solicitation, including a solicitation in person or by telephone, that:
>
>> (A) concerns an action for personal injury or wrongful death or otherwise relates to an accident or disaster involving the person to whom the communication or solicitation is provided or a relative of that person and that was provided before the 31st day after the date on which the accident or disaster occurred; . . . [or]
>>
>> (C) concerns an arrest of or issuance of a summons to the person to whom the communication or solicitation is provided or a relative of that person and that was provided before the 31st day after the date on which the arrest or issuance of the summons occurred.[2]

The previous version of the statute came under constitutional scrutiny in 1994, when a district court ruled that the portion of the statute banning written

---

[1] TEX. PENAL CODE § 38.12(d)(1).

[2] § 38.12(d)(2).

No. 10-50568

solicitation of both accident victims and arrestees within 30 days of the accident or arrest was unconstitutional.[3] The state appealed only that part of the ruling that applied to accident victims, which we held to be constitutional, reversing the district court.[4]

After the 2009 amendments were passed, Appellees Christopher Villasana and Donald McKinley brought pre-enforcement actions challenging parts of the statute. Villasana challenged the portion of § 38.12(d)(2)(C) that prohibits written solicitation of persons who have been arrested or received a summons within 30 days of the person's arrest or receipt of the summons. McKinley challenged all forms of solicitation by chiropractors of accident victims within the first 30 days of their accident as criminalized by § 38.12(d)(2)(A). Both claimed that the respective sections were unconstitutional under the free speech and equal protection guarantees secured by both the United States and Texas Constitutions. The district court held a bench trial and entered judgment for Villasana and McKinley, enjoining the enforcement of the challenged sections of the Barratry Statute as violations of the United States Constitution's guarantee of free speech. Abbott timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.

Appellant first argues that the district court erred when it failed to dismiss Appellees' state law claims on Eleventh Amendment grounds. We review a district court's order denying a motion to dismiss on Eleventh Amendment grounds *de novo*.[5] The Eleventh Amendment bars private citizens from bringing suit against a state in federal court, unless the suit falls within the narrow

---

[3] *Moore v. Morales*, 843 F. Supp. 1124, 1126 (S.D. Tex. 1994).

[4] *Moore v. Morales*, 63 F.3d 358, 363–64 (5th Cir. 1995).

[5] *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

exception articulated by the Supreme Court in *Ex Parte Young*.[6]   The *Young* exception "has been accepted as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'"[7] This exception strips the individual state actor of immunity and allows a private citizen to sue that individual in federal court for prospective injunctive relief based on allegations that the actor violated federal law.[8]  However, since state law claims do not implicate federal rights or federal supremacy concerns, the *Young* exception does not apply to *state* law claims brought against the state.[9]  Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself.[10]  Appellees brought suit against Abbott in his official capacity.[11]  Therefore, the Eleventh Amendment bars suit here, where Abbott is sued in his official capacity as Attorney General of the State of Texas for violations of the Texas Constitution.  Appellees' state law claims are dismissed.

---

[6] *Id.* (citing *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908)).

[7] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105, 104 S. Ct. 900, 910 (1984) (quoting *Young*, 209 U.S. at 160, 28 S. Ct. at 454).

[8] *Id.* at 102–03, 104 S. Ct. at 909.

[9] *Id.* at 106, 104 S. Ct. at 911.

[10] *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).  However, "the Eleventh Amendment do[es] not deprive federal courts of jurisdiction over state law claims against state officials strictly in their individual capacities." *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992).

[11] Even had Appellees named Abbott as a defendant in his individual capacity, we would hold that this suit was against the sovereign because "the effect of the judgment would be to restrain the [state] from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S. Ct. 999, 1006 (1963) (internal quotation omitted).

No. 10-50568

## III.

Appellant next argues that the district court should have dismissed both McKinley's and Villasana's federal claims for lack of standing. "This court reviews questions of standing *de novo*."[12]   Abbott contends that Villasana's claims should have been dismissed for lack of standing because Villasana challenged a portion of the statute already held unconstitutional by a federal district court and thus presents no live case or controversy.   Villasana argues that because the Texas Legislature amended the Barratry Statute in 2009, the amended version is, in essence, a new statute and his challenge to the amended statute is not mooted by the district court's earlier ruling.   Abbott also argues that McKinley lacks standing because he cannot demonstrate a credible threat of being prosecuted under the Barratry Statute.   Both McKinley and Villasana urge that they intend to take actions in the near future that would fall within the acts prohibited by the Barratry Statute.

### 1.   *Villasana (The Attorney)*

Assuming *arguendo* that Villasana had initial standing to bring the challenge, his claim must now be dismissed as moot. "[T]he standard . . . for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"[13]   Abbott has declared that neither he nor any county or district attorney in Harris and its bordering counties will attempt to enforce § 38.12(d)(2)(C) as it applies to written communications since it was declared

---

[12] *Nat'l Athletic Trainers' Ass'n, Inc. v. U.S. Dep't of Health & Human Servs.*, 455 F.3d 500, 502 (5th Cir. 2006).

[13] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 709 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S. Ct. 361, 364 (1968)).

No. 10-50568

unconstitutional by a district court in 1994.[14]  We have no reason to doubt his statement.  Because Villasana is a resident of Harris County and has not alleged that he practices outside of the counties affected by the injunction, his claims are dismissed as moot.

2.    *McKinley (The Chiropractor)*

McKinley brings his claims under a separate subsection, and Abbott has made no statement that § 38.12(d)(2)(A) will not be enforced.  Challenges to statutes regulating commercial speech do not enjoy the expanded standing inquiry employed in normal First Amendment overbreadth cases "because the overbreadth doctrine does not apply to commercial speech."[15]  Therefore, McKinley bears the burden to show (1) a concrete and particularized injury in fact that is actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct alleged; and (3) that the injury will be redressed by a favorable decision.[16]

Abbott contends that McKinley has alleged no actions that McKinley intends to take that would be punishable by § 38.12(d)(2)(A).  However, McKinley argues that he could violate the plain language of the statute by giving business cards and brochures to his satisfied patients and encouraging them to share the information with others.  We agree.

On its face, the Barratry Statute reaches a person who knowingly permits written communications to be provided to an accident victim within 30 days of

---

[14] As explained above, attorney Villasana challenges § 38.12(d) as it relates to written solicitations of arrestees.  In 1994, the state successfully appealed the district court's judgment holding the entire statute unconstitutional but only the part that related to written solicitations of accident victims, leaving in place—at least in theory—the holding of the district court as it relates to arrestees.  *Moore*, 63 F.3d at 363–64.

[15] *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 496–97, 102 S. Ct. 1186, 1193 (1982).

[16] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 2136 (1992).

the accident.[17]  The statute does not require that the third party providing the written information be paid for the referral.  McKinley stated in his complaint that he "encourage[s] people who are satisfied with [his] work to share such information with others, *especially at the earliest possible point after an injury* when medical treatment is needed the most."[18]  Therefore, on its face, McKinley's complaint alleged that he has acted and intends to act in a manner that could violate § 38.12(d)(2)(A).  McKinley has, therefore, established a concrete injury that is actual and imminent.

Abbott does not argue that McKinley cannot meet the other prongs of the standing inquiry.  If, as we have stated, McKinley's actions might violate the Barratry Statute, then on the facts of this case he has also established the necessary causal link and redressability.  McKinley has standing to bring his claims.

## IV.

Last, we consider whether the Barratry Statute violates the United States Constitution's First Amendment guarantee to free speech.  This is a mixed question of fact and law, which we review *de novo*.[19]  Since, as we have noted above, the overbreadth doctrine does not apply to commercial speech, "[t]o succeed in a typical facial attack, [McKinley] would have to establish 'that no set of circumstances exists under which [§ 38.12(d)(2)(A)] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'"[20]

---

[17] § 38.12(d)(2)(A).

[18] R. USCA5 19 (emphasis added).

[19] *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. Baton Rouge*, 876 F.2d 494, 496 (1989) (citing *Dunagin v. City of Oxford*, 718 F.2d 738, 748 n.8 (5th Cir.1983)).

[20] *United States v. Stevens*, 130 S. Ct. 1577, 1587 (2010) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100 (1987); *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7, 117 S. Ct. 2258, 2305 (1997) (Stevens, J., concurring)).

No. 10-50568

Personal solicitation like that covered by the Barratry Statute is commercial expression protected by the First Amendment.[21] A restriction on commercial expression must survive the intermediate scrutiny articulated by the Supreme Court in *Central Hudson*.[22] Under *Central Hudson*, the threshold question is whether the restriction governs speech that concerns unlawful activity or is misleading.[23] Such speech receives no First Amendment protection and the state may regulate it.[24] Because the section of the Barratry Statute that McKinley challenges regulates speech that is lawful and not misleading, we move past the threshold and analyze the regulation using the three-prong inquiry set forth in *Central Hudson*.

For the first prong, we must determine "whether the asserted governmental interest is substantial."[25] That protecting the privacy of accident victims within the first 30 days after their accident is a substantial governmental interest has already been definitively decided by both this court[26] and the Supreme Court.[27] And a long line of Supreme Court precedent holds that a state has a compelling interest in the licensing and regulation of professions within its boundaries.[28] The state's interest is substantial.

---

[21] *Edenfield v. Fane*, 507 U.S. 761, 765, 113 S. Ct. 1792, 1797 (1993).

[22] *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367, 122 S. Ct. 1497, 1504 (2002) (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 100 S. Ct. 2343 (1980)).

[23] *Id.*

[24] *Id.*

[25] *Id.* (internal quotation omitted).

[26] *Moore*, 63 F.3d at 361–63.

[27] *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 625, 115 S. Ct. 2371, 2376 (1995).

[28] *See id.* (listing cases).

For the second prong we consider whether "the harms [the government] recites are real and that [the] restriction will in fact alleviate them to a material degree."[29]   The record contains ample evidence that the harm caused by solicitation of accident victims by chiropractors within the first 30 days after an accident is real. The state produced testimony from the Director of Enforcement at the Texas Board of Chiropractic Examiners that the Board had received a large number of complaints from accident victims concerning solicitation activities of chiropractors directly following the victims' automobile accidents. Additionally, the state introduced anecdotal testimony from accident victims about solicitation directly after an automobile accident and the stress caused by those solicitations. There was also expert testimony about the stress disorder many people suffer for up to a month after a traumatic event, which can lead to cognitive dysfunctions in information processing and decision-making. This is sufficient evidence to demonstrate that the harm is real.[30] And, we conclude that a rule prohibiting solicitation for a 30 day period materially alleviates that harm by preventing the harm identified by the state for the amount of time needed.

Finally, section 38.12(d)(1)(A) also passes the third prong of *Central Hudson* because "it is not more extensive than is necessary to serve [the stated] interest."[31] The state has shown that the harm to accident victims is caused by personal solicitation within the first 30 days after an accident. The Barratry Statute regulates exactly that harm for exactly that time period. In response, McKinley makes two main arguments. First, he contends that the interest would be more effectively served by using a Do Not Call Registry, allowing accident victims to opt out of personal solicitation. This argument

---

[29] *Id.* at 626, 115 S. Ct. at 2377 (internal quotations omitted).

[30] *See id.* at 628–29.

[31] *Thompson*, 535 U.S. at 367, 122 S. Ct. at 1504 (internal quotation omitted).

misunderstands the narrow tailoring inquiry for commercial speech, which is not a least restrictive means test.[32] The state's means need not represent "the single best disposition," but instead must be reasonable and "in proportion to the interest served."[33] This regulation is reasonable and proportionate.

McKinley's second and primary argument, however, is that the Barratry Statute as written would punish McKinley if his patients passed his brochure or business card to an accident victim within the first 30 days. However, even assuming for the sake of argument that under McKinley's hypothetical fact pattern the statute would be unconstitutional as applied, that condition fails to invalidate the statute on its face because McKinley has not demonstrated that the statute is unconstitutional in all its applications.[34] As we noted above, since McKinley may not bring a First Amendment overbreadth claim, he must demonstrate in this facial attack "that no set of circumstances exists under which [§ 38.12(d)(2)(A)] would be valid."[35] He has not met that burden. Section 38.12(d)(1)(A) meets the narrow tailoring requirement sufficiently to survive McKinley's facial attack.

McKinley also brought claims for violations of his Fourteenth Amendment rights to Due Process and Equal Protection, which the district court never addressed. We will not address them in the first instance on appeal. Accordingly, we dismiss the state law claims of both Appellees and the federal claims of attorney Villasana, and we reverse and remand McKinley's federal claims for proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

[32] *Florida Bar*, 515 U.S. at 632, 115 S. Ct. at 2380.

[33] *Id.* (internal quotations omitted).

[34] *Stevens*, 130 S. Ct. at 1587 (internal quotation omitted).

[35] *Id.*