Michael J. Truncale, United States District Judge
Defendants Alex M. Azar, II, the Secretary of the United States department of Health and Human Services, and Seema Verma, Administrator for the Centers for Medicare and Medicaid Services (collectively, "CMS") move to dismiss the complaint filed by Plaintiff True Health Diagnostics, LLC ("THD") for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted. [Dkt. 9]. THD did not file a response to CMS's Motion, and its response time has lapsed. Local Rule CV-7(e). Although THD did not file a separate response to CMS's Motion to Dismiss, THD did address the subject-matter jurisdiction issues in several pleadings and orally during the July 17, 2019 show cause hearing regarding its Motion for Preliminary Injunction. Based on the relevant filings, evidence, and applicable law, CMS's Motion to Dismiss is GRANTED.
I. FACTUAL AND PROCEDURAL BACKGROUND
THD provides nationwide diagnostic services, consisting primarily of blood and urine testing, for Medicare beneficiaries. THD provides such services by (1) testing samples from physicians in their lab in either Frisco, Texas, or Richmond, Virginia; or (2) managing outpatient labs in *660 hospitals partnered with THD. Most of THD's 400 employees are lab technicians and billers. Approximately 20% of all THD patients are currently Medicare patients, and 30% of THD revenue is from CMS [Dkt. #3-2, ¶ 4]. Private providers supply the remaining 70% of revenue.
A. 2017 and 2019 CMS Payment Suspensions
On May 25, 2017, CMS suspended 100% of THD's Medicare payments, without prior notice, based on "credible allegations of fraud" pursuant to 42 C.F.R. § 405.372(a)(4). [Dkt. 2, ¶ 34]. THD submitted a rebuttal statement on June 5, 2017 [Dkt. 2, ¶ 41], but CMS refused to lift the suspension [Dkt. 2, ¶ 46]. Approximately a month later on June 23, 2017, CMS reduced the suspension to 35% (the "2017 Suspension"). [Dkt. 2, ¶ 49].
On June 11, 2019, while the 2017 Suspension was in place, CMS implemented a second suspension of Medicare payments based on "recent credible allegations of fraud" (the "2019 Suspension"). [Dkt. 2, ¶ 58]. THD submitted its rebuttal statement concerning the 2019 suspension on June 25, 2019. [Dkt. 3-3]. On July 2, 2019, THD brought suit against CMS for the 2017 and 2019 Suspensions. Specifically, THD alleges five causes of action for CMS's actions: (1) violation of procedural due process; (2) violation of substantive due process; (3) violation of the Administrative Procedure Act; (4) mandamus; and (5) declaratory judgment. [Dkt. 2].
Subsequently, on July 5, 2019, CMS moved to dismiss the case based on Federal Rule of Civil Procedure 12(b)(1), lack of subject-matter jurisdiction, and 12(b)(6), failure to state a claim for which relief may be granted. [Dkt. 9]. On the same date, CMS issued an overpayment determination concerning the 2017 Suspension. [Dkt. 9 at 7].
B. The Administrative Process for Medicare Claims
Medicare is the federal medical insurance program for the aged and disabled. 42 U.S.C. § 1395 et seq. A provider's participation in the Medicare program is completely voluntary. See 42 C.F.R. § 489.10. The Secretary for the Department of Health and Human Services ("HHS") operates Medicare through CMS, which in turn hires contractors to perform administrative functions on CMS's behalf. 42 U.S.C. § 1395u.
Medicare is a pay-first system. That is, once a Medicare provider submits claims for payment-without any records, documents, or proof that the services were provided or that the services meet Medicare requirements-CMS, through its contractors, automatically pays those claims within a couple of weeks after submission. CMS can suspend payments, "in whole or in part," when it determines "a credible allegation of fraud exists against a provider or supplier." 42 C.F.R. § 405.371(a)(2). In cases of suspected fraud, CMS need not issue a notice to the supplier prior to suspension. 42 C.F.R. § 405.372(a)(4).
When CMS suspends a provider or supplier's payments, it must provide the suspended entity an opportunity to submit a rebuttal statement as to why CMS should end the suspension. 42 C.F.R. §§ 405.373(a)(2) ; 405.374. CMS must then respond to the rebuttal within 15 days with a "notification of determination" that contain "specific findings on the conditions upon which the suspension is initiated, continued, or removed and an explanatory statement of the determination." 42 C.F.R. § 405.375(b)(2). This determination is not appealable and "is not an initial determination" within the Medicare Act administrative process. Id. Cf. 42 C.F.R. § 405.924 *661 (listing actions that are considered initial determinations).
Once CMS determines that there has been an overpayment, it sends an overpayment determination and demand letter to the provider or supplier. This initial overpayment determination triggers the multi-step administrative appeals process for a provider or supplier to follow if it is dissatisfied with the initial overpayment determination. 42 C.F.R. § 405.904(a)(2). The administrative appeal steps are as follows:
(1) A redetermination of the initial determination of overpayment by a Medicare administrative contractor. ( 42 U.S.C. § 1395ff(a)(3)(A) ; 42 C.F.R. § 405.940 et seq. );
(2) A reconsideration by a Qualified Independent Contractor ("QIC") ( 42 U.S.C. § 1395ff(c), (g) ; 42 C.F.R. § 405.960 et seq. );
(3) A de novo review and hearing before an Administrative Law Judge ("ALJ") ( 42 U.S.C. § 1395ff(d) ; 42 C.F.R. §§ 405.1002(a)(2), 405.1006(b) ); and
(4) A review and decision by the Medicare Appeals Council ("MAC"), which is considered a final decision of the Secretary ( 42 U.S.C. § 1395ff(b) ; 42 C.F.R. § 405.1102(a) ).
A provider or supplier may only seek review in a federal district court after a receiving a decision from the MAC. 42 U.S.C. § 1395ff(b)(1)(A) ; 42 C.F.R. § 405.1136 ; 42 C.F.R. § 405.1130.
II. APPLICABLE LAW
"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." Ramming v. United States , 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). Considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." Id.
Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute. Kokkonen v. Guardian Life Ins. Co. of Am. , 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ; Bender v. Williamsport Area Sch. Dist. , 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). The court must presume it lacks jurisdiction; the party asserting jurisdiction has the burden of establishing the contrary. Id. When a court dismisses for lack of subject matter jurisdiction, that dismissal "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." Ramming , 281 F.3d at 161.
The district court may dismiss for lack of subject matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Williamson v. Tucker , 645 F.2d 404, 413 (5th Cir. 1981). Regardless of the nature of attack, the party asserting jurisdiction constantly carries the burden of proof to establish that jurisdiction does exist. Ramming v. United States , 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." CleanCOALition v. TXU Power , 536 F.3d 469, 473 (5th Cir. 2008) (quoting Home Builders Ass'n of Miss., Inc. v. City of Madison , 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotations omitted).
*662 III. DISCUSSION
THD alleges this Court has subject-matter jurisdiction pursuant to: (1) federal question ( 28 U.S.C. § 1331 ) and 42 U.S.C. § 405(g) ; (2) mandamus jurisdiction ( 28 U.S.C. § 1361 ); (3) the All Writs Act ( 28 U.S.C. § 1651(a) ); (4) Bivens jurisdiction; (5) the Court's inherent equity powers; and (6) the Court's power to preserve its own jurisdiction. [Dkt. 2, ¶ 17]. CMS contends none of those provide this court with subject-matter jurisdiction.
A. This Court lacks federal question jurisdiction.
Although federal courts have original jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States" ( 28 U.S.C. § 1331 ), absent administrative exhaustion, Medicare cases are generally excluded from this general grant of federal-question jurisdiction. Family Rehab., Inc. v. Azar , 886 F.3d 496, 501, n.4 (5th Cir. 2018). This is because "[t]he Medicare act severely restricts the authority of federal courts by requiring 'virtually all legal attacks under the Act be brought through the agency.' " Physician Hosps. of Am. v. Sebelius , 691 F.3d 649, 653 (5th Cir. 2012) (quoting Shalala v. Ill. Council on Long Term Care, Inc. , 529 U.S. 1, 13, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) ). "By statute, claims under Medicare must first be presented to the HHS Secretary." Id.
Federal courts are vested with jurisdiction over only a "final decision of HHS when dealing with claims "arising under" the Medicare Act. 42 U.S.C. § 405(g) and (h).[1] A claim arises under the Medicare Act for purposes of federal question jurisdiction "if the claim is inextricably intertwined with a claim for Medicare benefits." RenCare, Ltd. v. Humana Health Plan of Texas, Inc. , 395 F.3d 555, 557 (5th Cir. 2004) (internal quotations omitted). The term "arising under" is broadly construed to encompass all claims for relief, regardless of whether the claimant seeks benefits, or declaratory or injunctive relief. Heckler v. Ringer , 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984).
To determine whether subject-matter jurisdiction exists under 42 U.S.C. § 405(g), court apply a two-prong test: (1) "there must have been a presentment to the Secretary"; and (2) "the claimant must have exhausted his administrative review." Affiliated Prof'l Home Health Care agency v. Shalala , 164 F.3d 282, 284 (5th Cir. 1999) (citing Mathews v. Eldridge , 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ). The first element, presentment, can never be waived and "no decision of any type can be rendered if this requirement is not satisfied." Id. The second element, exhaustion, may be deemed waived if (a) the claims are "entirely collateral" to a substantive agency decision, and (b) "full relief cannot be obtained at a post-deprivation hearing." Family Rehab. v. Azar , 886 F.3d 496, 501 (5th Cir. 2018).
Because the parties agree the claims arise under the Medicare Act, the Court need only to determine whether it has subject-matter jurisdiction under the two-prong Eldridge test.
1. THD fulfilled its obligation to present its claims to the Secretary.
The Eldridge court held that the plaintiff beneficiary met the presentment requirement *663 because he "presented" a claim simply by answering a questionnaire as to whether his benefits should be terminated, even when there was no prior decision as to his eligibility. Eldridge , 424 U.S. at 329-30, 96 S.Ct. 893. Likewise, he also presented a claim by subsequently responding to a tentative determination of ineligibility of benefits. Id. at 330, 96 S.Ct. 893.
THD contends that it fulfilled the presentment requirement for the 2017 Suspension because CMS made an overpayment determination and that, for the 2019 Suspension, the requirement was satisfied by THD's rebuttal efforts. [Dkt. 29 at 3].
This Court finds that THD met this nonwaivable requirement when it submitted its Rebuttal Statements pursuant to 42 C.F.R. § 405.372(b)(2). [Dkt. 2, ¶¶ 3, 41]; [Pl.'s Ex. B, Dkt. #35]. Like in Eldridge , where the plaintiff beneficiary responded to a tentative determination of ineligibility, here THD responded to a determination of suspension. The Rebuttal Statements present a claim that the payments were wrongfully withheld and required CMS to respond pursuant to 42 C.F.R. § 405.375(a).
2. THD's failure to administratively exhaust cannot be waived.
As noted, the second prong of administrative exhaustion may be deemed waived if (1) the claims are "entirely collateral" to a substantive agency decision; and (2) "full relief cannot be obtained at a post-deprivation hearing" Family Rehab. , 886 F.3d at 501. If the relief sought is "inextricably intertwined" with the substantive claims for benefits then it is not collateral. Heckler v. Ringer , 466 U.S. 602, 614, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984). For a claim to be collateral, it must not require the court to "immerse itself" in the substance of the underlying Medicare claim or demand a "factual determination" as to the application of the Medicare Act. Affiliated Prof'l. , 164 F.3d at 285-86. Nor can the claim request a relief that would be "administrative," i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process. Id. Instead, "the claim must seek some form of relief that would be unavailable through the administrative process." Eldridge , 424 U.S. at 330-32, 96 S.Ct. 893. The Supreme Court also recognized that the constitutional tenor of a claim is not a determinative factor in deciding whether a claim is collateral-that is, a party's characterization of a claim as "collateral" is not determinative. Heckler , 466 U.S. at 614, 104 S.Ct. 2013.
In Family Rehabilitation , the Fifth Circuit deemed the administrative exhaustion requirement waived because it determined plaintiff's claims were collateral claims. Family Rehab. , 886 F.3d at 503. In that case, CMS made a determination of overpayment and was about to begin the recoupment process. Id. at 500. Plaintiff reached the third step of the administrative appeals process: a hearing with an ALJ. Id. at 500. But instead of receiving a hearing within 90 days, as required by 42 C.F.R.§ 405.1100, plaintiff could not obtain a hearing for three to five years due to ALJ's backlog of cases. Id. Plaintiff asked that the district court for a hearing before CMS began to recoup its Medicare revenues. Id. at 503. The Fifth Circuit considered plaintiff's due-process and ultra vires claims to be collateral because they "only require the court to determine how much process is required under the Constitution and federal law before recoupment" and did "not seek a determination that the recoupments are wrongful under the Medicare Act." Id. at 503. Instead, plaintiff only asked that recoupment be suspended until a hearing was held, "which is quite different from a permanent reinstatement of benefits." Id. at 504.
*664 Here, in contrast, THD did not show that its claims are wholly collateral. Indeed, THD seeks the exact relief courts have identified as non-collateral. THD requests that the Court lift the 2019 Suspension be lifted before it even receives an overpayment determination from CMS. This is the exact substantive, permanent relief that THD can seek through the agency appeals process. As conceded by THD, the 2017 Suspension is no longer before the Court because CMS issued its overpayment determination on July 5, 2019; nor is THD arguing it cannot begin the appeals process for the 2017 Suspension overpayment determination. [Dkt. 20 at 3]. Instead, THD argues CMS violated its due process rights because the 2019 Suspension is allegedly based on claims that were part of the 2017 Suspension. To determine whether such an allegation is true, the Court would need to immerse itself in the substance of the underlying Medicare claim or demand a factual determination as to the application of the Medicare Act-thus making THD's claim not collateral. See Family Rehab. , 886 F.3d at 501.
THD also failed to show that it could not obtain full relief at a post-deprivation hearing. To demonstrate such a deprivation, THD needs to raise a colorable claim that erroneous recoupment will damage it in a way not recompensable through retroactive payments. Family Rehab. 886 F.3d at 504 (citing Eldridge , 424 U.S. at 331, 96 S.Ct. 893 ). "The requirement of a colorable claim is not a stringent one." Abraham v. Exxon Corp. , 85 F.3d 1126, 1129 (5th Cir. 1996) (internal quotations omitted). A plaintiff need show nothing more than "some possible validity." Family Rehab. 886 F.3d at 504 (citing Richardson v. United States , 468 U.S. 317, 326, n.6, 104 S.Ct. 3081, 82 L.Ed.2d 242, (1984) ).
In Family Rehabilitation , the Court found that the combined threats of going out of business and disruption to Medicare patients was sufficient for irreparable injury. Family Rehab. 886 F.3d at 504. There, plaintiff provided home healthcare services to patients and Medicare payments constituted 94% of plaintiff's revenue. Family Rehab., 886 F.3d at 499.
In contrast, Medicare payments only make up 30% of THD's revenue. Despite the 2017 Suspension, THD continued with the same business structure of making 30% of its revenue Medicare-dependent-even though it knew its payments were going to be withheld until CMS rendered an overpayment determination. THD made the business decision to continue participating in Medicare, and after more than two years, it cannot require this Court to redress its business decision by threatening imminent bankruptcy. Further, THD voluntarily participates in Medicare. The federal statutes and regulations outlining CMS's suspension and administrative appeals process are publicly available so THD knew or should have known about the administrative procedures before deciding to participate.
Additionally, unlike in Family Rehabilitation , THD's health services will cause less disruption to Medicare patients. THD is a diagnostics laboratory, usually performing tests in an early stage of a disease progression. If THD were to file for bankruptcy or to liquidate, there is a low risk of patient disruption because patients using THD's services seek diagnostic testing and not an immediate health service. Moreover, these patients do not know where their medical samples are being tested because it is the physicians who are choosing which diagnostics laboratory to use. Further, as presented at the preliminary injunction hearing, there are over 3,500 diagnostic laboratories nationwide that provide *665 similar services as THD. Even if THD were to close, the physicians have plenty of options to choose from and patient samples can be tested at numerous other labs.
This Court cannot deem the exhaustion requirement waived since both requirements (1) entirely collateral claims, and (2) full relief cannot be obtained at a post-deprivation hearing, have not been met. Family Rehab. , 886 F.3d at 501. In consequence, this Court lacks subject-matter jurisdiction under 42 U.S.C. § 405(g).
B. No mandamus jurisdiction exists.
"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Section 1361 only provides jurisdiction to order a completion of affirmative actions. Randall D. Wolcott, M.D., P.A. v. Sebelius , 635 F.3d 757, 766 (5th Cir. 2011). "[M]andamus jurisdiction exists if the action is an attempt to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." Id. It does not provide jurisdiction over requests "for other types of relief-such as injunctive relief." Id. Injunctive relief is the remedy to, (1) restrain the doing of injurious acts, or (2) to require undoing of injurious acts and restoration of the status quo. Id.
The Fifth Circuit in Family Rehabilitation held that there was no mandamus jurisdiction in the Medicare case in which since plaintiff only seeks injunctive relief. Family Rehab. , 886 F.3d at 506. But the Fifth Circuit reserved the issue of whether asking for the timely hearing afforded mandamus jurisdiction or not. Id at 507.
THD requests mandamus relief for the following:
"(i) terminate their unlawful suspensions of Medicare payments to True Health until such time as an overpayment decision is issued and due process provided; (ii) immediately release the suspended funds being held in escrow by Defendants; and (iii) implement a full, speedy, and adequate administrative review process if Defendants intend to recoup or withhold any of True Health's Medicare payments in the future."
[Dkt. 2 at 20].
As to (i) and (ii), THD seeks an order to compel CMS to remedy the allegedly injurious act of suspending and withholding its Medicare payments. Like in Family Rehab. , that constitutes an injunctive relief, and thus no mandamus jurisdiction exists for those claims.
As to (iii), THD seeks an affirmative action from CMS, but CMS does not owe a nondiscretionary duty to plaintiff. Taking THD's facts as true, it is not entitled to an overpayment determination in a specific amount of time not provided by federal regulation or statute. Nor does CMS have a duty to start the appeals process within a timeframe not set by federal law. Congress, through the Medicare Act and federal regulations, designed am administrative process, and THD fails to point out any specific section requiring CMS to "implement a full, speedy, and adequate administrative review process" if it intends to recoup or withhold payments in the future.
C. The All Writs Act ( 28 U.S.C. § 1651(a) ) does not provide subject-matter jurisdiction.
THD conceded at the preliminary injunction hearing that "the All Writs Act essentially collapses into the mandamus analysis." Because this Court determines that it has no mandamus jurisdiction, it need not address 28 U.S.C. § 1651(a) as its *666 own basis for jurisdiction. Further, the All Writs Act is not itself a grant of jurisdiction. See In re Tennant , 359 F.3d 523, 527 (D.C. Cir. 2004).
D. Bivens does not provide subject-matter jurisdiction.
Although the Supreme Court has not discussed the availability of a Bivens remedy in the context of the Medicare Act, it has refused to extend Bivens in the Social Security context. Schweiker v. Chilicky , 487 U.S. 412, 420, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). As the Fifth Circuit has stated when addressing this issue, courts "will not imply a Bivens remedy for an alleged constitutional violation in the denial of Medicare Act reimbursements, because Congress has created a comprehensive statutory administrative review mechanism, which was intended fully to address the problems created by wrongful denial of Medicare reimbursements." Marsaw v. Thompson , 133 F. App'x 946, 948 (5th Cir. 2005). Beyond mentioning Bivens once in its Complaint, THD does not explain why the Court has jurisdiction under Bivens. THD has failed to meet its burden of establishing subject-matter jurisdiction under Bivens .
E. The Court's inherent equity power and power to preserve its own jurisdiction does not provide subject-matter jurisdiction.
Although THD asserts the court's inherent equity power and power to preserve its own jurisdiction as bases for subject-matter jurisdiction, it fails to provide one legal authority explaining how either concept grants subject-matter jurisdiction when none exists elsewhere. The Court knows of no such legal authority and does not find subject-matter jurisdiction based on its inherent equity power or power to preserve its own jurisdiction.
Because the Court finds that it lacks subject matter jurisdiction, it need not entertain CMS's 12(b)(6) argument for failure to state a claim.
IV. CONCLUSION
IT IS THEREFORE ORDERED that CMS's Motion to Dismiss [Dkt. 9] is GRANTED.
IT IS FURTHER ORDERED that this case is dismissed without prejudice.

Both § 405(g) and (h) have been made applicable to Medicare. See 42 U.S.C. § 1395ff(b)(1)(A) (making section 405(g) applicable to Medicare). Cf. Shalala v. Ill. Council on Long Term Care, Inc. , 529 U.S. 1, 12-13, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000) ; Physician Hosps., 691 F.3d at 653 (holding that 42 U.S.C. § 1395ii "makes Section 405(h) applicable to Medicare").