# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 18-50710

_____

United States Court of Appeals
Fifth Circuit

**FILED**

January 3, 2020

Lyle W. Cayce
Clerk

DAVID MCMAHON; STEVEN LITTLEFIELD; TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INCORPORATED,

      Plaintiffs - Appellants

v.

PRESIDENT GREGORY L. FENVES, In His Official Capacity as President of the University of Texas at Austin,

      Defendant - Appellee

**********************************************************************

Consolidated with 18-50800

RICHARD BREWER; TEXAS DIVISION, SONS OF CONFEDERATE VETERANS, INCORPORATED,

      Plaintiffs - Appellants

v.

RON NIRENBERG, Mayor of the City of San Antonio, In his Individual Capacity; ROBERTO TREVINO, San Antonio City Councilman in his Individual Capacity; WILLIAM SHAW, San Antonio City Councilman in his Individual Capacity; REBECCA VIAGRAN, San Antonio City Councilman in her Individual Capacity; REY SALDANA, San Antonio City Councilman in his Individual Capacity; SHIRLEY GONZALES, San Antonio City Councilman in her Individual Capacity; GREG BROCKHOUSE, San Antonio City Councilman in his Individual Capacity; ANA SANDOVAL, San Antonio City Councilman in her Individual Capacity; MANUEL PALAEZ, San Antonio City Councilman in his Individual Capacity; JOHN COURAGE, San Antonio City Councilman in his Individual Capacity; CLAYTON PERRY, San Antonio City Councilman in his Official Capacity; CITY OF SAN ANTONIO,

      Defendants - Appellees

No. 18-50710 c/w
No. 18-50800

———————————

Appeals from the United States District Court
for the Western District of Texas

———————————

Before CLEMENT, ELROD, and DUNCAN, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

This consolidated case involves First Amendment and state-law challenges to the removal or relocation of Confederate monuments from a San Antonio park and on the University of Texas's Austin campus. In the University case, David McMahon, Steven Littlefield, and the Texas Division of the Sons of Confederate Veterans sued the University of Texas to reverse its decision to relocate several Confederate statues. In the San Antonio case, Richard Brewer and the Texas Division of the Sons of Confederate Veterans first moved to temporarily restrain the City of San Antonio from removing a Confederate monument and two cannons from a City park and then moved to compel their reinstallation. Both district courts dismissed Plaintiffs' First Amendment claims for lack of standing and then declined to exercise supplemental jurisdiction over their state-law claims. Plaintiffs appealed. We affirm the district courts' dismissals.

I.

In the early 1900s, Major George Littlefield, a Civil War veteran, donated funds to the University of Texas to build a "massive bronze arch over the south entrance to the campus," a statue of President Woodrow Wilson, and statues of five Confederate leaders: Jefferson Davis, Robert E. Lee, Albert Sidney Johnston, and John H. Reagan. The University placed the statues on its campus in the 1930s, but never built the arch.

No. 18-50710 c/w
No. 18-50800

About a century later, University President Gregory Fenves had the statues relocated. Plaintiffs David McMahon, Steven Littlefield, and the Texas Division of the Sons of Confederate Veterans sued to enjoin the University—first in state court and then in federal court in Austin—to reverse its decision to relocate the statues. *See McMahon v. Fenves*, 323 F. Supp. 3d 874 (W.D. Tex. 2018). The Texas trial court dismissed the suit for lack of standing; the Texas court of appeals affirmed; the Texas Supreme Court denied review. *See Bray v. Fenves*, No. 06-15-00075-CV, 2016 WL 3083539 (Tex. App.—Texarkana Mar. 24, 2016, pet. denied) (mem. op.).

Plaintiffs' federal complaint alleges First Amendment and Texas Monument Protection Act violations and claims that the Board of Regents breached the bequest agreement and exceeded its authority over the University. The Sons of Confederate Veterans are a non-profit organization, and McMahon and Littlefield claim to be "descendant[s] of Confederate veterans," with Littlefield a descendant of Major Littlefield. Fenves moved to dismiss for lack of subject-matter jurisdiction, arguing that Plaintiffs lacked standing because they did not suffer a concrete and particularized injury. The district court granted Fenves's motion, holding that Plaintiffs' familial ties to Confederate veterans did not mean that relocating Confederate statues, which allegedly silenced Plaintiffs' political viewpoint, caused them a cognizable injury. *McMahon*, 323 F. Supp. 3d at 879–81. The court, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992), stated that "[o]ur system of governance assigns the vindication of value preferences to the democratic political process, not the judicial process." *Id.* at 880. After the court dismissed Plaintiffs' First Amendment claim, it declined to exercise supplemental jurisdiction over their remaining state-law claims. *Id.* at 881–82.

No. 18-50710 c/w
No. 18-50800

In the San Antonio case, the City Council gave the United Daughters of the Confederacy permission to erect a "Confederate Monument" in a City park in 1899. About ten years later, the City placed two cannons next to the monument. According to meeting minutes from the Albert Sidney Johnston Camp of the United Confederate Veterans, Congress donated the cannons "for the benefit of the Confederate Camp."[1]

About a century later, the City Council passed an ordinance to remove the monument and cannons from the park. The Texas Division of the Sons of Confederate Veterans, this time with Richard Brewer, sued the City in federal court in San Antonio. *See Brewer v. Nirenberg*, No. SA:17-CV-837-DAE, 2018 WL 8897851 (W.D. Tex. Sept. 17, 2018). They moved for a temporary restraining order to prevent the City from removing the monument and cannons. The district court denied the motion, but ordered the City to remove the monument "in such a manner as to preserve [its] integrity," and further, that it "be stored in a secure location in order to protect it from damage or from being defaced[,] pending resolution of this lawsuit." *Id.* at *1. Plaintiffs then amended their complaint, adding as Defendants the City Councilmembers in their individual capacities and alleging claims for First Amendment and Texas Antiquities Code violations, for rendering impossible a charitable gift's purpose, and for conversion. The City moved for summary judgment on all Plaintiffs' claims, and the individual Defendants moved to dismiss.

The district court granted the City's summary-judgment motion on Plaintiffs' First Amendment claim, holding that Plaintiffs lacked standing because their alleged injuries were not particularized. *Id.* at *4. The San Antonio court followed the Austin court's lead, stating that, though "Plaintiffs

---

[1] Presumably, "Confederate Camp" refers to the Albert Sidney Johnston Camp.

4

are likely more deeply attached to the values embodied by the Monument than the average person walking through [the City park], . . . 'their identities as descendants of Confederate veterans do not transform an abstract ideological interest in preserving the Confederate legacy into a particularized injury.'" *Id.* (quoting *McMahon*, 323 F. Supp. 3d at 880).

Brewer, unlike the individual Plaintiffs in the University case, also asserted standing as a municipal taxpayer. The court held that, because the monument was removed and the funds to do so were already expended, Brewer's request to enjoin the removal and the expenditure was moot. *Id.* at *5. It also held that, because Brewer no longer sought an injunction and because taxpayers lack standing to sue for previously expended funds, he lacked taxpayer standing. *Id.* With all Plaintiffs' federal claims dismissed, the court declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims and then denied the individual Defendants' motion to dismiss as moot. *Id.* at *6.

Plaintiffs in both cases appealed, and the cases were consolidated.

II.

The issue before us is whether Plaintiffs have standing to bring their First Amendment claims.[2] We review whether jurisdiction exists de novo. *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). The party asserting jurisdiction has the burden of establishing it. *Id.* At the motion-to-dismiss stage, this means "alleg[ing] a plausible set of facts establishing jurisdiction." *Id.*; *see* FED. R. CIV. P. 12(b)(1).

---

[2] Plaintiffs' other claims arise under state law. Both district courts declined to exercise discretionary supplemental jurisdiction over these state-law claims after dismissing Plaintiffs' free-speech claims. Plaintiffs do not challenge this holding on appeal. Thus, Plaintiffs have forfeited any argument that the district courts erred in not exercising jurisdiction over these claims.

No. 18-50710 c/w
No. 18-50800

Plaintiffs argue that they have standing under *Lujan* to bring their free-speech claims. Brewer argued in his briefing that he has municipal-taxpayer standing to bring his free-speech claim, but abandoned this ground for standing at oral argument. We therefore do not address that issue. *See, e.g.*, *In re Thalheim*, 853 F.2d 383, 386 (5th Cir. 1988) ("summarily affirm[ing]" the district court on a claim that appellant "expressly abandoned" at oral argument).

To establish standing, Plaintiffs must show that they have suffered an injury in fact: a personal injury that is traceable to the defendant's alleged conduct and that is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. This injury must be both "concrete" and "particularized." *Id.* at 560. An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 560 n.1. That is, the plaintiff must have "a direct stake in the outcome." *See Sierra Club v. Morton*, 405 U.S. 727, 740 (1972). To satisfy this injury-in-fact test, Plaintiffs therefore must allege more than an injury to *someone's* concrete, cognizable interest; they must "be [themselves] among the injured." *Id.* at 734–35.

Plaintiffs argue that, because they have unique ties to these Confederate monuments and to the Confederacy, these monuments express Plaintiffs' political viewpoint and, therefore, that Defendants' removal or relocation of these monuments violated Plaintiffs' First Amendment rights. That is, Plaintiffs claim to have standing because moving these monuments injured *their* free-speech rights. But even if Plaintiffs allege a concrete free-speech interest—i.e., if moving these monuments even implicates the First Amendment—they fail to show that the violation of this interest is, in fact, an injury to *their* rights. This is because, though these ties might give Plaintiffs strong reasons to care about these monuments, Plaintiffs fail to explain how

6

No. 18-50710 c/w
No. 18-50800

these ties give Plaintiffs a First Amendment-based stake in the outcome of this litigation. They claim that these monuments are their speech, but fail to plausibly allege how these ties make that so.

The United Daughters of the Confederacy, Major Littlefield, and Congress donated these monuments or the funds to build them. Plaintiffs argue on appeal that these donors or the beneficiaries of these donations collaborated with the University or the City when erecting or placing them and, therefore, co-authored the political speech that the monuments express. But Plaintiffs never argue that *they* donated the monuments or the funds for building them or explain how *they* "co-authored" the monuments' speech. So even if displaying these monuments was private speech, and even if moving them impermissibly abridged that speech, Plaintiffs have failed to plausibly show that these monuments are *their* speech.

To be clear, Plaintiffs do not assert these free-speech claims on another party's behalf. If they did, prudential limitations on standing would likely bar their suit. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Nor do they assert that they attempted to speak but that the University or the City thwarted that attempt. *Cf., e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819 (1995) (state university denied student group funding to print student newspaper). Nor that they have been prevented from hearing speech. *Cf., e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 (1980) ("Free speech carries with it some freedom to listen."). Instead, they insist that they suffered a particularized First Amendment injury because moving these monuments abridged *their* speech. But their position is based on a fundamental confusion about what makes an injury particularized.

7

No. 18-50710 c/w
No. 18-50800

Plaintiffs state several reasons why they are particularly invested in these monuments. They feel strongly about the message these monuments supposedly convey about the Confederacy and the Civil War. They claim to be descendants of Confederate veterans, including one of the donors. They claim that these monuments were public charitable gifts and that Plaintiffs are among the intended beneficiaries. For example, they argue that the cannons were donated for the benefit of the United Confederate Veterans and that the Sons of Confederate Veterans, as the successor association to that group, is now that gift's intended beneficiary. Plaintiffs therefore care deeply about preserving monuments that convey a viewpoint that they support and that, they believe, their ancestors donated for their benefit. And Plaintiffs believe that these ties give them unique reasons for caring about these monuments, which means that their allegedly unconstitutional removal caused Plaintiffs a particularized injury—it is particular to them because only they have these alleged ties. But that is not how particularity works. Plaintiffs confuse having particular reasons for caring about these monuments with having a particularized injury.

Plaintiffs would of course prefer a world where the University and the City display Plaintiffs' favored monuments. Plaintiffs provide reasons—presumably strong ones—for why they are more attached to the monuments' viewpoint than the general public is. But strong reasons are no better than weak ones at giving Plaintiffs a direct and personal stake in this litigation. To be sure, we do not doubt that Plaintiffs are offended by the removal of these monuments or that they feel this offense more acutely because of their familial ties. These ties, however, do not distinguish Plaintiffs from any other persons who might claim offense at the removal of these monuments. This is because these ties affect only the magnitude of Plaintiffs' indignation, not the nature of

8

their injury. For Plaintiffs, their injury is the pain of believing that a certain expression of a viewpoint with which they agree has been unconstitutionally removed from public display. That is a generalized psychological injury, not a particularized free-speech one—it is felt by all who are offended by this removal. That Plaintiffs are more offended than someone who is likeminded yet lacks these ties does not make that generalized injury particularized. Nor does it morph these monuments into Plaintiffs' own speech. Plaintiffs have shown only a rooting interest in the outcome of this litigation, not a direct and personal stake in it. They are in the same position as any enthusiastic onlooker.

Moreover, Plaintiffs' contentions that they are the beneficiaries of these gifts or are the successors-in-interest to a beneficiary are red herrings. The standing this might confer is for their state-law claims—e.g., that the University breached a bequest agreement or that the City rendered a charitable gift impossible—not for their First Amendment claims. Thus, these facts are irrelevant to whether Plaintiffs have standing for their federal claims.

The fundamental and fatal flaw with Plaintiffs' argument is that they conflate agreeing with speech with authoring speech. They claim that their speech has been abridged, yet conspicuously absent from their allegations is anything showing this to be true. Plaintiffs merely agree with the ideas that they feel these monuments express and sued in hopes of keeping them on display. They are undoubtedly passionate about these ideas and are upset that symbols of their values, like these monuments, have been removed from the public square. But what Plaintiffs seek is only to "vindicate their own value preferences," not to redress a First Amendment injury particular to them. *See Sierra Club*, 405 U.S. at 740. Their passion, however sincere, does not place

No. 18-50710 c/w
No. 18-50800

them among the injured. Thus, Plaintiffs have not alleged a particularized injury.

## III.

Because Plaintiffs have not alleged a particularized injury, they lack standing to bring their First Amendment claims. We AFFIRM the district courts' judgments.